Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHERINE FINGER, | Case No. **'22CV39  LL  AHG** |
| Plaintiff, | |
| vs. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| ARENA PHARMACEUTICALS, INC., GARY A. NEIL, JAYSON DALLAS, OLIVER FETZER, KIERAN T. GALLAHUE, JENNIFER JARRETT, KATHARINE KNOBIL, AMIT D. MUNSHI, TINA S. NOVA, NAWAL OUZREN, and STEVEN SCHOCH, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Katherine Finger ("Plaintiff"), on behalf of herself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Arena Pharmaceuticals, Inc. ("Arena" or the "Company") and the members of Arena's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Arena will be acquired by Pfizer Inc. ("Pfizer") through Pfizer's subsidiary Antioch Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On December 13, 2021, Arena and Pfizer issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated December 12, 2021, (the "Merger Agreement") to sell Arena to Pfizer. Under the terms of the Merger Agreement, each holder of Arena common stock will receive $100.00 in cash for each share of Arena common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $6.7 billion.

3. On January 3, 2022, Arena filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Arena stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Board's financial advisors, Evercore Group L.L.C. ("Evercore") and Guggenheim Securities, LLC ("Guggenheim"). Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Arena's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to

enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company maintains offices located in this District; and (ii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**THE PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Arena.

9. Defendant Arena is a Delaware corporation, with its principal executive offices located at 136 Heber Avenue, Suite 204, Park City, Utah 84060 and offices located at 6154 Nancy Ridge Drive, San Diego, California 92121. Arena is a biopharmaceutical company providing novel medicines with pharmacology and pharmacokinetics to patients worldwide. The Company's common stock trades on the Nasdaq Global Select Market under the ticker symbol "ARNA."

10. Defendant Garry A. Neil ("Neil") has been Chair of the Board since February 2021, and a director of the Company since February 2017.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

11. Defendant Jayson Dallas ("Dallas") has been a director of the Company since February 2017.

12. Defendant Oliver Fetzer ("Fetzer") has been a director of the Company since February 2017.

13. Defendant Kieran T. Gallahue ("Gallahue") has been a director of the Company since July 2018.

14. Defendant Jennifer Jarrett ("Jarrett") has been a director of the Company since June 2017.

15. Defendant Katharine Knobil ("Knobil") has been a director of the Company since June 2020.

16. Defendant Amit D. Munshi ("Munshi") has been President and Chief Executive Officer ("CEO") of the Company since May 2016, and a director of the Company since June 2016.

17. Defendant Tina S. Nova ("Nova") has been a director of the Company since September 2004.  Defendant Nova previously served as Chair of the Board from June 2016 to February 2021, and as the Board's lead independent director from June 2015 to June 2016.

18. Defendant Nawal Ouzren ("Ouzren") has been a director of the Company since February 2021.

19. Defendant Steven Schoch ("Schoch") has been a director of the Company since June 11, 2021.

20. Defendants identified in paragraphs 10-19 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21. Pfizer is a Delaware corporation, with its principal executive offices located at 235 East 42nd Street, New York, New York 10017.  Founded in 1849, Pfizer is a research-based, global

biopharmaceutical company.  Pfizer applies science and its global resources to bring therapies to people that extend and significantly improve their lives through the discovery, development, manufacturing, marketing, sale and distribution of biopharmaceutical products worldwide.  It works across developed and emerging markets to advance wellness, prevention, treatments and cures that challenge the most feared diseases of our time.  Pfizer collaborates with healthcare providers, governments and local communities to support and expand access to reliable, affordable healthcare around the world.  Pfizer's common stock trades on the New York Stock Exchange under the ticker symbol "PFE."

22.     Merger Sub is a Delaware corporation and a wholly owned subsidiary of Pfizer.

### SUBSTANTIVE ALLEGATIONS

**Background of the Company**

23.     Incorporated in 1997, Arena focuses on providing novel medicines with pharmacology and pharmacokinetics to patients worldwide.  The Company's investigational clinical programs include (i) Etrasimod (APD334) that is in Phase III clinical trial for ulcerative colitis, Phase IIb/III clinical trial for Crohn's disease, Phase II clinical trial for alopecia areata, Phase III clinical trial for atopic dermatitis, and Phase IIb clinical trial for eosinophilic esophagitis; (ii) Olorinab (APD371), which is in Phase IIb clinical trial for the treatment of abdominal pain associated with irritable bowel syndrome; (iii) APD418 that is in Phase I clinical trial for acute heart failure; and (iv) Temanogrel for coronary microvascular obstruction is in Phase II clinical trial.  Arena also develops ralinepag (APD811), which is in Phase III clinical trial for pulmonary arterial hypertension.  Arena has collaboration agreements with Second Genome, Inc.; United Therapeutics Corporation; Everest Medicines Limited; Beacon Discovery; Boehringer Ingelheim International GmbH; Eisai Co., Ltd.; Eisai Inc.; and Aristea Therapeutics, Inc. for the development of RIST4721 for treatment of serious immune-mediated inflammatory diseases.

24. Estrasimod is a next-generation, oral, highly selective sphingosine 1-phosphate ("S1P") receptor modulator, discovered by Arena, designed to provide systemic and local cell modulation by selectively targeting S1P receptor subtypes 1, 4 and 5. S1P receptors have been demonstrated to be involved in the modulation of several biological responses, including lymphocyte trafficking from lymph nodes to the peripheral blood. By isolating subpopulations of lymphocytes in lymph nodes, fewer immune cells are available in the circulating blood to effect tissue damage. Etrasimod has therapeutic potential in immune-mediated inflammatory disease areas including gastroenterology and dermatology.

**The Proposed Transaction**

25. On December 13, 2021, Arena and Pfizer issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> NEW YORK & PARK CITY, Utah--Dec. 13, 2021-- Pfizer Inc. (NYSE: PFE) and Arena Pharmaceuticals, Inc. (Nasdaq: ARNA) today announced that the companies have entered into a definitive agreement under which Pfizer will acquire Arena, a clinical stage company developing innovative potential therapies for the treatment of several immuno-inflammatory diseases. Under the terms of the agreement, Pfizer will acquire all the outstanding shares of Arena for $100 per share in an all-cash transaction for a total equity value of approximately $6.7 billion. The boards of directors of both companies have unanimously approved the transaction.
>
> Arena's portfolio includes diverse and promising development-stage therapeutic candidates in gastroenterology, dermatology, and cardiology, including etrasimod, an oral, selective sphingosine 1-phosphate (S1P) receptor modulator currently in development for a range of immuno-inflammatory diseases including gastrointestinal and dermatological diseases.
>
> "The proposed acquisition of Arena complements our capabilities and expertise in Inflammation and Immunology, a Pfizer innovation engine developing potential therapies for patients with debilitating immuno-inflammatory diseases with a need for more effective treatment options," said Mike Gladstone, Global President & General Manager, Pfizer Inflammation and Immunology. "Utilizing Pfizer's leading research and global development capabilities, we plan to accelerate the clinical development of etrasimod for patients with immuno-inflammatory diseases."
>
> Arena has built a robust development program for etrasimod, including two Phase 3 studies in ulcerative colitis (UC), a Phase 2/3 program in Crohn's Disease, a planned

Phase 3 program in atopic dermatitis, and ongoing Phase 2 studies in eosinophilic esophagitis and alopecia areata.

In UC, the randomized, placebo-controlled, dose-ranging, Phase 2 study (OASIS) evaluated the efficacy and safety of etrasimod in moderate to severe UC patients over 12 weeks versus placebo.  In the study, most patients who achieved clinical response, clinical remission, or endoscopic improvement at week 12 experienced sustained or improved effects up to week 46 with etrasimod 2 mg in the open-label extension.  Etrasimod also demonstrated a favorable benefit/risk profile, consistent with safety findings reported in the double-blind portion of OASIS.  The findings are encouraging as there remains significant unmet need for safe and effective oral therapies in UC for patients with inadequate response, loss of response, or intolerance to conventional or advanced therapies.  The OASIS trial supported the advancement of the ELEVATE UC 52 and UC 12 trials, which are currently fully enrolled, and for which data are expected in 2022.

In addition, Arena's pipeline includes two development-stage cardiovascular assets, temanogrel and APD418.  Temanogrel is currently in Phase 2 for the treatment of microvascular obstruction and Raynaud's phenomenon secondary to systemic sclerosis. APD418 is currently in Phase 2 for acute heart failure.

"We're delighted to announce Pfizer's proposed acquisition of Arena, recognizing Arena's potentially best in class S1P molecule and our contribution to addressing unmet needs in immune-mediated inflammatory diseases," said Amit D. Munshi, President and Chief Executive Officer of Arena.  "Pfizer's capabilities will accelerate our mission to deliver our important medicines to patients.  We believe this transaction represents the best next step for both patients and shareholders."

Pfizer expects to finance the transaction with existing cash on hand.

Under the terms of the merger agreement, Pfizer will acquire all of the outstanding shares of Arena common stock for $100 per share in cash.  The proposed transaction is subject to customary closing conditions, including receipt of regulatory approvals and approval by Arena's stockholders.

Pfizer's financial advisors for the transaction are BofA Securities and Centerview Partners LLC, with Ropes & Gray and Arnold & Porter Kaye Scholer LLP acting as its legal advisors.  Guggenheim Securities, LLC and Evercore Group LLC served as Arena's financial advisors, while Cooley LLP served as its legal advisor.

**Insiders' Interests in the Proposed Transaction**

26. Arena insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted

because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Arena.

27. Notably, Arena insiders stand to reap substantial financial benefits for securing the deal with Pfizer. Pursuant to the Merger Agreement, all outstanding Company options, restricted stock units, and performance based restricted stock units will vest and convert into the right to receive cash payments. The following table summarizes the value of cash payments with respect to Company common stock and equity awards that Company insiders stand to receive upon closing of the merger:

| Name | Shares #(1) | Shares $(2) | Options #(3) | Options $ | RSUs #(4) | RSUs $ | PRSUs Target(5) | PRSUs Target $ | Total |
|---|---|---|---|---|---|---|---|---|---|
| Amit D. Munshi | 10,750 | $ 999,105 | 1,228,000 | $71,629,335 | 117,689 | $11,768,889 | 21,000 | $2,100,000 | $86,497,329 |
| Laurie Stelzer | 8,244 | $ 766,197 | 170,850 | $ 9,178,332 | 28,882 | $ 2,888,222 | 7,600 | $ 760,000 | $13,592,751 |
| Vincent E. Aurentz | 27,000 | $2,509,380 | 400,826 | $25,504,146 | 28,882 | $ 2,888,222 | 7,600 | $ 760,000 | $31,661,748 |
| Robert Lisicki | 9,441 | $ 877,447 | 293,850 | $15,576,892 | 28,882 | $ 2,888,222 | 7,600 | $ 760,000 | $20,102,561 |
| Joan Schmidt, J.D. | 7,941 | $ 738,037 | 170,850 | $ 8,528,892 | 28,882 | $ 2,888,222 | 7,600 | $ 760,000 | $12,915,151 |
| Doug Manion, M.D., FRCP (C) | — | — | 90,000 | $ 4,669,200 | 37,222 | $ 3,722,222 | 7,600 | $ 760,000 | $ 9,151,422 |
| Tina S. Nova, Ph.D. | 16,576 | $1,540,573 | 42,002 | $ 2,288,602 | 3,067 | $ 306,700 | — | — | $ 4,135,875 |
| Jayson Dallas, M.D. | 4,085 | $ 379,660 | 48,869 | $ 3,208,163 | 3,067 | $ 306,700 | — | — | $ 3,894,523 |
| Oliver Fetzer, Ph.D | 1,525 | $ 141,734 | 48,869 | $ 3,208,163 | 8,167 | $ 816,700 | — | — | $ 4,166,597 |
| Kieran T. Gallahue | 4,744 | $ 440,907 | 24,285 | $ 1,052,704 | 8,167 | $ 816,700 | — | — | $ 2,310,311 |
| Jennifer Jarrett | 5,704 | $ 530,130 | 44,702 | $ 2,859,802 | 5,513 | $ 551,300 | — | — | $ 3,941,232 |
| Garry Neil, M.D. | 8,150 | $ 757,461 | 48,869 | $ 3,208,163 | 3,067 | $ 306,700 | — | — | $ 4,272,324 |
| Katharine Knobil, M.D. | 2,939 | $ 273,151 | 14,702 | $ 540,877 | 3,882 | $ 388,200 | — | — | $ 1,202,228 |
| Nawal Ouzren | 893 | $ 82,995 | 11,368 | $ 317,566 | 3,665 | $ 366,500 | — | — | $ 767,061 |
| Steven J. Schoch | — | — | 10,803 | $ 376,052 | 4,600 | $ 460,000 | — | — | $ 836,052 |

28. In addition, if they are terminated in connection with the Proposed Transaction, Arena insiders stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Tax Reimbursement(4) | Total ($) |
|---|---|---|---|---|---|
| Amit D. Munshi | $3,145,001 | $26,632,512 | $89,736 | $— | $29,867,249 |
| Laurie Stelzer | $1,470,000 | $ 8,414,736 | $49,799 | $— | $ 9,934,535 |
| Vincent E. Aurentz | $1,425,001 | $ 6,901,304 | $53,178 | $— | $ 8,379,483 |
| Robert Lisicki | $1,425,001 | $ 8,623,615 | $49,799 | $— | $10,098,415 |
| Joan Schmidt, J.D. | $1,386,001 | $ 7,928,453 | $37,583 | $— | $ 9,352,037 |

**The Proxy Statement Contains Material Misstatements or Omissions**

29. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Arena's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

30. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Evercore and Guggenheim.

*Material Omissions Concerning the Company's Financial Projections*

31. The Proxy Statement omits material information regarding the Company's financial projections.

32. The Proxy Statement fails to disclose all line items underlying the Company's: (i) Risk Adjusted Total Revenue; (ii) EBIT; and (iii) Unlevered Free Cash Flow.

33. Additionally, the Proxy Statement notes that the projections are risk-adjusted. Yet, the Proxy Statement fails to disclose a quantification of the assumptions underlying the risk-adjusted projections. The Proxy Statement further fails to disclose the non-risk-adjusted projections so Arena stockholders can evaluate the financial impact the Company's risk-adjustments had on the projections.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

34. The omission of this material information renders the statements in the "Financial Projections" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Evercore's and Guggenheim's Financial Analyses***

35. The Proxy Statement omits material information regarding Evercore's and Guggenheim's financial analyses.

36. The Proxy Statement describes Evercore's and Guggenheim's fairness opinions and the various valuation analyses performed in support of their opinions. However, the description of Evercore's and Guggenheim's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Arena's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Evercore's and Guggenheim's fairness opinions in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

37. With respect to Evercore's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the unlevered, after-tax free cash flows ("UFCFs") for fiscal years 2022 through 2040 used by Evercore in the analysis;[1] (ii) quantification of the terminal year estimate of the UFCFs for Arena; (iii) quantification of the terminal values for Arena; (iv) the present value of tax savings from Arena's estimated usage of net operating losses; and (v) quantification of the inputs and assumptions underlying the discount rates ranging from 8.5% to 10.0%.

---

[1] The UFCFs used by Evercore are defined as "net operating profit after tax, plus depreciation and amortization, plus share-based compensation, less increases in net working capital and capital expenditures." Proxy Statement at 38. The UFCFs set forth in the "Financial Projections" section of the Proxy Statement are defined as "EBIT less (i) taxes, less (ii) net working capital, less (iii) capital expenditures, plus (iv) depreciation and amortization." *Id.* at 36.

38.     With respect to Evercore's *Selected Transactions Analysis*, the Proxy Statement fails to disclose Arena's estimated 2026 revenue.

39.     With respect to Evercore's *Equity Research Analyst Price Targets* analysis, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

40.     With respect to Evercore's *Selected Public Company Trading Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for each of the companies analyzed by Evercore; and (ii) Arena's estimated 2026 revenue.

41.     With respect to Evercore's *Premiums Paid Analysis*, the Proxy Statement fails to disclose: (i) the transactions observed; and (ii) the individual premiums observed for each of the transactions.

42.     With respect to Guggenheim's *Arena Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the risk-adjusted UFCFs for Arena used by Guggenheim in the analysis, or clarification the UFCFs used by Guggenheim are set forth on page 36 of the Proxy Statement; (ii) quantification of Arena's terminal year normalized UFCF; (iii) quantification of the terminal values for the Company; and (iv) quantification of the inputs and assumptions underlying the discount rate range of 8.00% to 9.75%.

43.     With respect to Guggenheim's *Arena Wall Street Equity Research Analyst Stock Price Targets* analysis, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

44.     With respect to Guggenheim's *Premiums Paid in Selected Precedent Merger and Acquisition Transactions* analysis, the Proxy Statement fails to disclose: (i) the transactions observed; and (ii) the individual premiums observed for each of the transactions.

45. The omission of this material information renders the statements in the "Opinion of Evercore Group L.L.C." and "Opinion of Guggenheim Securities, LLC" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

46. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Arena will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

47. Plaintiff repeats all previous allegations as if set forth in full.

48. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

49. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Evercore and Guggenheim. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

50.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

51.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

52.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

53.     Plaintiff repeats all previous allegations as if set forth in full.

54.     The Individual Defendants acted as controlling persons of Arena within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Arena, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

55.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

57. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Arena's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Arena, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Arena stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: January 12, 2022                           **WEISSLAW LLP**
                                                   Joel E. Elkins

                                                   By: */s/ Joel E. Elkins*

                                                   Joel E. Elkins
                                                   611 Wilshire Blvd., Suite 808
                                                   Los Angeles, CA 90017
                                                   Telephone: 310/208-2800
                                                   Facsimile: 310/209-2348
                                                           -and-
                                                   Richard A. Acocelli
                                                   305 Broadway, 7th Floor
                                                   New York, NY 10007
                                                   Telephone: 212/682-3025
                                                   Facsimile: 212/682-3010

                                                   *Attorneys for Plaintiff*

- 15 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS